IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PHILIP W. McCLURE,                    )
                                      )   Civil No. 09-421-PK
          Petitioner,                 )
                                      )
     v.                               )
                                      )   FINDINGS AND RECOMMENDATION
BRIAN BELLEQUE,                       )
Superintendent, Oregon State          )
Penitentiary,                         )
                                      )
          Respondent.                 )

     Philip W. McClure
     SID #5072942
     2605 State Street
     Salem, Oregon  97310-0505

          *Pro Se* Petitioner

     John R. Kroger
     Attorney General
     Andrew D. Hallman
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

          Attorneys for Respondent

     1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner Philip W. McClure brings this habeas corpus action pursuant to 28 U.S.C. § 2254 challenging the Oregon Board of Parole and Post-Prison Supervision's ("Board") April 4, 2004 decision (Board Action Form ("BAF") #4) to defer his parole twenty-four months. For the reasons set forth below, the Petition for Writ of Habeas Corpus [2] should be denied, and Judgment should be entered dismissing this action with prejudice.

### BACKGROUND

On June 15, 1979, McClure was convicted of Rape in the First Degree and sentenced to a 20-year term. Respondent's Exhibit 101. On February 14, 1983, while on parole, McClure was convicted of Rape in the First Degree, Sodomy in the First Degree, Kidnapping in the First Degree and Robbery in the First Degree. The court imposed four consecutive, indeterminate, 20-year sentences with 10-year minimums, all to run consecutively with his 1979 20-year conviction. Id. On April 4, 2004, the Board held a hearing to determine whether to firm up McClure's previously projected release date or to extend it further. The Board deferred McClure's release date for 24 months and set a new projected release date of October 30, 2006. Respondent's Exhibit 102, p. 4.

McClure filed a timely administrative review request of BAF #4, but relief was denied. Respondent's Exhibit 103, pp. 86-103. He then filed a petition for judicial review, but the Oregon Court

of Appeals affirmed the Board's Order on Administrative Review without written opinion, and the Oregon Supreme Court denied review.  McClure v. Board of Parole and Post-Prison Supervision, 223 Or. App. 495, 196 P.3d 123 (2008), rev. denied 346 Or. 10, 202 P.3d 179 (2009); Respondent's Exhibits 113-14.

On April 20, 2009, McClure filed this action.  His grounds for relief are summarized as follows:

1.    Ground One:  The Board violated McClure's rights under the *ex post facto* clause when the Board itself made the finding that he suffered from a "severe emotional disturbance."

Supporting Facts:  Under the law in effect at the time of McClure's conviction, only a psychiatrist or psychologist could make such a finding.

2.    Ground Two:  The Board violated McClure's Due Process rights by acting beyond its authority and qualifications when it found that he suffered from a severe emotional disturbance.

Supporting Facts:  Between October 30, 1982 and January 18, 2002, McClure had not been subject to testing that would have revealed if he ever suffered emotional disturbance.  His record indicated that he did not suffer from any emotional disturbance, *e.g.*, he never resided in special housing and was never treated for any emotional disturbance.  Moreover, his 2002 and 2004 psychological evaluations were negative for a diagnosis of emotional disturbance.

3.    Ground Three:  The Board violated McClure's Due Process rights when it failed to support its finding that he suffered from a "present and severe emotional disturbance that constitutes a danger to the health or safety of the community" with substantial or even some evidence.  There was no evidence in the record to substantiate the Board's findings and no relevant medical or psychological diagnosis.

3 - FINDINGS AND RECOMMENDATION

Supporting Facts:   No qualified psychologist ever found McClure suffered from a severe emotional disturbance and his institutional record does not support such a finding.

4.   Ground Four:   The Board violated McClure's Due Process rights when it based its finding that he suffered from a "present and severe emotional disturbance that constitutes a danger to the health or safety of the community" on inadmissible evidence.

Supporting Facts:   Evaluations used in McClure's dangerous offender hearing related to his 1978 offense are inadmissible in any other proceeding.  Moreover, use of a "Supplemental Investigation Report" containing excerpts from this dangerous offender hearing is unauthorized under state law and violates his Fifth Amendment privilege against self-incrimination.   In addition, each time McClure appears before the Board, "unproven allegations of criminal offenses which [he] has neither been charged nor convicted of" are included in the record.   Finally, the Board relies on inadmissible and/or irrelevant grievances filed during his incarceration for the 1978 conviction, but fails to take notice of his conduct and grievances filed during his incarceration for the 1983 conviction.

5.   Ground Five:   The Board violated McClure's rights under the Americans with Disabilities Act ("ADA") when it relied on a tainted psychological evaluation during his parole exit interview because he was suffering from a serious medical condition stemming from an underlying disability at the time he was examined by the Board contracted psychologist.   The 2004 psychological evaluation was flawed and the Board should not have considered it.

Supporting Facts:   The psychologist refused to provide him reasonable accommodations such as an alternative testing and interview date.   In addition, the psychologist made discriminating remarks about McClure's responses to the Personal Inventory Assessment ("PAI") pertaining to his medical condition and his request for a drink of water during the interview.

6.   Ground Six:   As used by the Board, the term "severe emotional disturbance" is unconstitutionally vague.

4 - FINDINGS AND RECOMMENDATION

Supporting Facts:  The term is not defined in the relevant Oregon statutes. Consequently, the Board or its contracted psychologists may arbitrarily create any definition or description of conduct to fit the term.

Respondent asks the court to deny relief on the Petition because:  (1) Grounds One through Four are procedurally defaulted, and the default is not excused; and (2) Grounds Five and Six were correctly denied on the merits in state court decisions entitled to deference.  In addition, respondent contends that pursuant to Swarthout v. Cooke, 131 S.Ct. 859 (Jan. 24, 2011), the defaulted due process claims set forth in Grounds Two, Three and Four fail to state a claim for relief.

## DISCUSSION

I.  **Exhaustion and Procedural Default**

A.  **Standards**

A habeas petitioner must exhaust his claims by presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed

5 - FINDINGS AND RECOMMENDATION

to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986). Alternatively, a litigant may be excused from the exhaustion requirement if he can show that there is either an absence of available state corrective process, or that circumstances exist that render the process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254 (b)(1)(B).

///

///

///

6 - FINDINGS AND RECOMMENDATION

B.  **Analysis**

*Ex Post Facto* **challenge (Ground One)**

Pursuant to Oregon law, a litigant may only challenge a decision by the Board if he first exhausts his administrative remedies.  ORS § 144.335(1)(b).  If the litigant has not exhausted the administrative remedies as provided by the Board's rules, the Oregon Court of Appeals will not consider the litigant's claims. Eli v. Board of Parole, 187 Or.App. 454, 457-58 (2003)(refusing to entertain claim which had not been presented to Parole Board during administrative review); Woolstrum v. Board of Parole, 141 Or.App. 332, 336-37 (1996)(same); Toriano v. Board of Parole, 144 Or.App. 325, 326 (1996)(same).

In this case, McClure availed himself of his administrative review remedy with the Board, but failed to present the subject *ex post facto* claim, thereby leaving it unpreserved for judicial review by the Oregon Court of Appeals.  While McClure indicates that he raised this claim during administrative review, the Court's careful review of his eight-page Administrative Review Request Form reveals he did not.  See Respondent's Exhibit 102, "Exhibit O", pp. 1-8.  While McClure did raise a due process claim alleging that the Board acted contrary to relevant Oregon law when it found that he suffered from a "present severe emotional disturbance that constitutes a danger to the health and safety of the community" and that it abused its discretion by making this unfounded medical

diagnosis in violation of clearly established law, he did not mention the *ex post facto* clause, let alone present a claim alleging the Board violated his rights under that clause during administrative review. A claim that the Board violated McClure's rights under the *ex post facto* clause is a discreet one and must be pled as such.

Thus, McClure failed to fairly present his Ground One *ex post facto* claim to Oregon's state courts in a procedural context in which its merit would be considered, and the claim is now defaulted. Relief on this claim should therefore be denied.

With regard to his due process claims (Grounds Two through Four), which respondent also contends are procedurally defaulted, the Court finds, for the reasons set forth below, that these claims are without merit. Accordingly, it will not determine whether they were fairly presented to Oregon's state courts. See 28 U.S.C. § 2248(b)(2) ("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

II. **Merits**

A. **Standard of Review**

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

8 - FINDINGS AND RECOMMENDATION

the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id. at 410. The state court's application of clearly established law must be objectively unreasonable. Id. at 409.

///

///

///

9 - FINDINGS AND RECOMMENDATION

B.   **Analysis**

  1.   **Due Process Claims (Grounds Two through Four)**

As noted above, McClure contends the Board violated his constitutional right to due process when it:  (1) acted beyond its authority and qualifications to find that he suffered from a "present and severe emotional disturbance that constitutes a danger to the health or safety of the community" (Ground Two); (2) failed to support its finding that he suffered from a "present and severe emotional disturbance that constitutes a danger to the health or safety of the community" with substantial or even some evidence (Ground Three); and (3) based its finding that he suffered from a "present and severe emotional disturbance that constitutes a danger to the health or safety of the community" on inadmissible evidence (Ground Four).

The U.S. Supreme Court has held that where state law creates a liberty interest in parole, "the Due Process Clause requires fair procedures for its vindication--and federal courts will review the application of those constitutionally required procedures." Cooke, 131 S.Ct. at 862.  However, the procedures required in the parole context are minimal and include:  an opportunity to be heard, and provision of a statement of the reasons why parole was denied.  Id. (citing Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979).  The Court further held that "[b]ecause the only federal right at issue is procedural, the

10 - FINDINGS AND RECOMMENDATION

relevant inquiry is what process [the petitioner] received, not whether the state court decided the case correctly." Id. at 863.

Here, assuming Oregon law creates a liberty interest in parole[1], McClure received at least the minimal amount of required process: He was provided with a copy of the examining psychologist's written report prior to the parole hearing, he was allowed to submit an eight-page document to the Board in advance of his hearing summarizing information he believed weighed in his favor and challenging the legitimacy of both his psychological evaluation and the psychologist's report, he was allowed to make statements at his exit interview contesting the evidence against him, and he was notified in writing of the reasons why his parole was denied. See Respondent's Exhibit 103: pp. 52-59; Transcript of Exit Interview, pp. 67-84; BAF #4, p. 87.

Moreover, McClure's efforts to distinguish his case from Cooke on the basis that retroactive application of that case to the Board's 2004 denial of his parole is improper and that the Board refused to make a "reasonable determination" of the facts in light of the evidence presented at his hearing, are unavailing. In fact, the parole denials at issue in Cooke occurred even earlier--in 2002

---

[1] Since, for the reasons below, the Court concludes McClure was afforded the protection due under Cooke, it need not decide whether Oregon law created a protected liberty interest in early release. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1398 (9th Cir. 1987)(conclusion that inmate received process due under prior Supreme Court decision on parole release relieved court of necessity of addressing existence of liberty interest).

11 - FINDINGS AND RECOMMENDATION

and 2003.    Moreover, contrary to McClure's suggestion that the Court in <u>Cooke</u> held that the "some evidence" standard applies in the parole context, it clearly held that the only federal due process right at issue in cases such as these is procedural.

Accordingly, on this record, McClure's due process claims (Grounds Two through Four) should be denied.

### 2.    ADA Claim (Ground Five)

McClure contends the Board violated his rights under the ADA when it relied on a flawed psychological report to deny his parole. He alleges that at the time of his psychological evaluation and interview, he was suffering from a serious medical condition stemming from an underlying disability and that the psychologist (Dr. Starr) refused to provide him with any reasonable accommodations such as an alternative evaluation date.    The Board briefly discussed this issue with McClure at his exit interview:

> Hannon:    Let me ask you about the conclusions and recommendations of Dr. Starr's report.
>
> * * *
>
> Would you like to comment on Dr. Starr's comments here?
>
> McClure:  Well, when I saw Dr. Starr he -- I was just -- I -- I was escorted from the infirmary when I spoke to doctor -- well, when I spoke to Dr. Starr.  It was the day before I went out for a blood transfusion.  I -- I can't remember everything we did.  He insisted on having the interview even though I was extremely sick at the time.  As far as I can remember I -- I explained to him that I regretting [sic] the things I did in the past.
>
> * * *

12 - FINDINGS AND RECOMMENDATION

Washington:  Did you tell or do you recall if you told
Dr. Starr what your crimes were in the same manner that
you just told us?

McClure:  I told Dr. Starr that I committed the crimes.
I -- I didn't really go into a lot of detail because I
was very ill at the time.

Washington:  Why isn't it indicated in this report that
you were very ill and the only indication is that you
asked for water?

McClure:  Well, yeah, that kind of surprised me too
because I did ask Mr. Starr -- I needed some water
because I was severely anemic at the time.  I -- I --
they had -- they had to take me out for a blood
transfusion the next morning.  When you're  -- when
you're -- when you have all that blood loss you become --
your body gets really thirsty and that's why I asked him
for water at that time.  I was disoriented at that time
also.  I -- I told him that I was disoriented and
somewhat confused because of the blood loss.

Respondent's Exhibit 103 (Transcript of Exit Interview dated April

14, 2004), pp. 77-78, 80. Further, in denying this claim on

administrative review, the Board noted the following:

You allege that Dr. Starr did not take into consideration
that you were ill when you were participating in the
psychological evaluation and this is incorrect.  He
diagnosed you as having a Neurogenic Bladder, Rectal
Prolapse, and Hemorrhaging by self report under Axis III.

Respondent's Exhibit 102 (Administrative Review Response dated

January 10, 2006), p. 2.

The Court has carefully reviewed Dr. Starr's report.

Respondent's Exhibit 104 (Filed Under Seal), pp. 30-36. Dr. Starr

specifically noted that he advised McClure of the purpose of the

evaluation and that McClure consented to participate. The report

also includes a brief discussion of McClure's health, including his

history of neurogenic bladder, rectal prolapse and hemorrhages.
There is no mention, however, of McClure reporting he felt
seriously ill at the time of the evaluation or of him asking Dr.
Starr to reschedule the interview.  Dr. Starr also reported that
McClure was pleasant and cooperative throughout the assessment
procedure.    Where a federal statute, rather than the United
States Constitution, is the basis for a federal habeas claim,
relief is available only when the statutory error qualifies as "a
fundamental defect which inherently results in a complete
miscarriage of justice [or] an omission inconsistent with the
rudimentary demands of fair procedure." 28 U.S.C. 2254(a)(1994 &
Supp.2007); <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>Reed
v. Farley</u>, 512 U.S. 339, 348 (1994).  On this record, McClure
cannot establish that he was prejudiced by any alleged failure to
accommodate his "disability" during his psychological evaluation
and interview.  The Court finds there is no credible evidence that
McClure's health status and the Board's reliance on Dr. Starr's
report resulted in a complete miscarriage of justice or denial of
rudimentary demands of fair procedure, and his ADA claim should be
denied.

### 3.    <u>Unconstitutionally Vague Term:  "Present and Severe Emotional Disturbance" (Ground Six)</u>

During his administrative review process, McClure alleged that
the term "severe emotional disturbance" relied on by the Board to
deny his parole was overly broad and vague.   Here, respondent

contends the Ninth Circuit Court of Appeals settled this issue in
<u>Hess v. Board of Parole and Post-Prison Supervision</u> when it found
that pre-1993 ORS 144.125(3) was neither unconstitutionally vague
on its face nor as applied.    514 F.3d 909 (2008).[2]

McClure concedes <u>Hess</u> may control this Court's disposition of
his vagueness claim.    Nevertheless, he maintains it was wrongly
decided and raises it here to preserve the issue for appeal.
In addition, McClure seeks to distinguish his case from <u>Hess</u> on the
basis that, unlike the petitioner there, he successfully
participated in prison programming, the two had different
psychological diagnosis, the petitioner in <u>Hess</u> did not challenge
his parole hearing for procedural deficiencies, and the holding in
<u>Hess</u> is confined to the petitioner in that case.    The Court is not
persuaded by these arguments.

While McClure may disagree with <u>Hess</u>, this Court is bound by
its holding.    Moreover, the Court finds that the factors on which
McClure relies to distinguish his case from <u>Hess</u> either do not bear
on the question of whether the term "present and severe emotional
disturbance" is unconstitutionally vague or are not sufficient to
support an "as applied" challenge.    For example, given Dr. Starr's

----

[2]        Respondent   further   contends   the   Ninth   Circuit's
determination that the phrase "present severe emotional disturbance
such as to constitute a danger to the health and safety of the
community" was not vague also applies to his challenge to Oregon
Administrative Rules 255-60-005940 and 255-060-0012(3)(a) because
the administrative rules contain the same language.    Reply to
Petitioner's Brief in Support [61], pp. 1-2.

15 - FINDINGS AND RECOMMENDATION

diagnosis and conclusions[3], McClure's contention that he and the petitioner in Hess had different diagnosis is not helpful. See Respondent's Exhibit 102 (Administrative Review Response dated January 10, 2006), p. 2. Accordingly, McClure cannot demonstrate that the Board's denial of this claim was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court or that it was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings.

## RECOMMENDATION

Based on the foregoing, the Petition for Writ of Habeas Corpus [2] should be DENIED, and judgment should enter DISMISSING this case with prejudice.

In addition, the district judge should certify that McClure has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). This case is not appropriate for appellate review.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days

---

[3]   Dr. Starr's diagnosis included:  Paraphilia NOS with Features of Forcible Rape under Axis 1; Antisocial Personality Disorder under Axis II; under Axis V a Global Assessment of Functioning score of 50 indicating "severe symptoms of impairment in social functioning related to grandiose sense of self worth, lack of remorse or guilt, shallow affect, and failure to accept responsibility for actions."

from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**NOTICE**

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.  These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 5th day of March, 2012.

Paul Papak
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION